UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LIONEL GIBSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-00940-TWP-MJD |
| ) | |
| MARK SEVIER, ) | |
| ) | |
| Respondent. ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS
CORPUS, RESOLVING PENDING MOTIONS AND OBJECTIONS,
AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on Petitioner Lionel Gibson's ("Gibson") Petition for Writ of Habeas Corpus. (Dkt. 1.) In 2019, Gibson was disciplined for damaging his prison-issued electronic tablet. He seeks review of and relief from his disciplinary charge and punishment in case MCF 19-04-0595.

Gibson asserts a wide array of arguments in support of his Petition. In his response, the Respondent, Warden Sevier ("Respondent") supported his opposition to the Petition with 16 exhibits. Magistrate Judge Dinsmore denied the Respondent's Motion to maintain one of those exhibits under seal and with *ex parte* restrictions, (Dkt. 14), and the Respondent has objected under Federal Rule of Civil Procedure 72, (Dkt. 21). In this Entry, the Court rules on three preliminary motions: Gibson's Motion for Extension of Time to file his reply, (Dkt. 20); motion for court assistance, (Dkt. 27); and Motion for Production of Documents, (Dkt. 28), the Petition itself, and the Respondent's Rule 72 objection.

Because Gibson has not asserted a meritorious basis for relief, the Court **denies** the Petition and **directs the Clerk** to enter final judgment.

## I. PRELIMINARY MOTIONS

Gibson's Motion for Extension of Time to file his reply, (Dkt. 20), is **granted**. The Court deems Gibson's reply, (Dkt. 22), timely filed and has considered it in ruling on the petition.

Gibson's Motion for court assistance, (Dkt. 27), and Motion for production of documents, (Dkt. 28), request a copy of the docket sheet and ask the Court whether it has directed the staff at New Castle Correctional Facility to confiscate case documents from him. Gibson's motions, (Dkts. 27 and 28), are **granted** insofar as the **Clerk is directed** to include a copy of the public docket sheet with Gibson's copy of this entry. The motions are also **granted** to the extent the Court offers the following information:

- All orders of this Court appear on the docket.

- The Court does not issue separate orders to prison staff members that do not appear on the docket.

- When Magistrate Judge Dinsmore denied the Respondent's Motion to maintain the exhibit at Dkt. 13 under seal and with *ex parte* restrictions, he ordered the Clerk to lift the restrictions after 21 days "absent a Fed. R. Civ. P. 72(a) objection . . . ." (Dkt. 19 at 4.)

- The Respondent timely objected, (*see* Dkt. 21), so the restrictions remain in place, and the Court has not issued a copy to Gibson.

Gibson's motions, (Dkts. 27 and 28), are **denied** in all other respects. The Court addresses the Respondent's Rule 72 objection later in this Entry.

## II. PETITION FOR WRIT OF HABEAS CORPUS

Gibson challenges his conviction and sanctions in disciplinary case MCF 19-04-0595. His petition proceeds under 28 U.S.C. § 2254, and the Court may grant relief only if "he is in custody in violation of the Constitution or laws or treaties of the United States."

Habeas petitioners challenging disciplinary proceedings most commonly assert that they are "in custody in violation of the Constitution" because they have been deprived of good-time

credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours' advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

Disciplinary habeas actions are not limited, however, to due process challenges. The bottom-line question is whether the fact or duration of the petitioner's custody has been affected by a constitutional violation. Violations of other provisions, such as the Fourteenth Amendment's equal protection clause, can also justify habeas corpus relief.

## A.     The Disciplinary Proceeding

In 2019, Gibson was incarcerated at Miami Correctional Facility ("Miami"). He had an electronic tablet through a program operated by the prison and a contractor, GTL. According to a Report of Conduct ("conduct report"), Gibson handed his tablet to Caseworker B. Rogers on April 23, 2019, and indicated it was not working properly. (Dkt. 12-1.) The conduct report continues:

> When I attempted to trouble shoot the issue Offender Gibson informed me the only thing that is wrong is the headset jack is busted. I turned the tablet over and could see that it was cracked. I asked him if he used the correct headset, he stated yes. I was informed by Ms. Jiles that if he had used the correct headset for the tablet the jack would not be damaged. Due to Offender Gibson having it in his possession he will be held responsible for the damaged tablet.

*Id.*

Afterward, Gibson was charged with damaging state property in violation of Code B-215. (Dkt. 12-2.) Code B-215 prohibits "[u]nauthorized possession, destruction, alteration, damage to, or theft of property." (Dkt. 12-10 at 5.)

Correctional Officer Brianna Myers ("Officer Myers") presided over a disciplinary hearing on July 1, 2019. (Dkt. 12-5.) Gibson declined to make a statement in his defense. *Id.* Officer Myers found Gibson guilty of damaging property in violation of Code B-215 based on Caseworker Rogers' conduct report. *Id.* She assessed sanctions, including a loss of 30 days' earned credit time and restitution of $249.99. *Id.* Gibson unsuccessfully appealed his disciplinary conviction and sanctions to the Warden and to the Appeal Review Officer. (Dkts. 12-8, 12-9.)

**B.     Analysis**

Gibson articulates seven separate grounds for habeas relief in his Petition and more in his reply. The case is simpler than that, though. The record shows that the prison staff afforded Gibson all the protections required by due process, and he has not demonstrated a violation of any other federal right. Accordingly, the Court must deny his Petition.

    **1.     Sufficiency of Evidence**

Gibson argues that no evidence supports the hearing officer's conclusion that he violated Code B-215. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455– 56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The

4

some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

The evidence here is straightforward and supports the hearing officer's decision. The conduct report documents that Gibson's tablet was cracked when he handed it to Caseworker Rogers on April 23, 2019. (Dkt. 12-1.) He was in possession of the damaged property. The conduct report is evidence that Gibson was responsible for "damage to . . . property" and violated Code B-215. (Dkt. 12-10 at 5.)

Gibson offers several evidentiary arguments, all of which miss the point. He states "[t]here is no evidence to support an allegation of intentional destruction." (Dkt. 11 at 3.) But Code B-215 punishes *any* damage to property, not just *intentional* destruction of property. He argues that Ms. Jiles was "unqualified" to determine that Gibson damaged the tablet by using the wrong headset. *Id.* at 3–4. If true, this detracts from the *weight* of the evidence regarding *how* the tablet was damaged. There remains no debate that Gibson's tablet was damaged. Gibson appears to argue that the disciplinary code and perhaps the user agreement for the tablet program changed after he was disciplined in MCF 19-04-0595. (Dkt. 22 at 22.) This is irrelevant to what happened before and during MCF 19-04-0595.

5

"Some" evidence supports the hearing officer's conclusion that Gibson violated the version of B-215 that was in place at the time. This clears the evidentiary bar set by due process.

### 2. **Impartiality of Hearing Officer**

Gibson asserts several reasons why he believes Officer Myers failed to remain impartial while presiding over his disciplinary case. A prisoner in a disciplinary action has the right to be heard by an impartial decision-maker. *Hill*, 472 U.S. at 454. "'[T]he constitutional standard for impermissible bias is high,' . . . and an adjudicator is entitled to a presumption of 'honesty and integrity' absent clear evidence to the contrary." *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003)). The presumption is overcome—and the right to an impartial decision-maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Piggie*, 342 F.3d at 667.

According to Gibson, Officer Myers fell short of the standard for impartiality because:

- She began a disciplinary hearing, postponed it, discussed the case with her superiors, held a second hearing, and found Gibson guilty. (Dkt. 11 at 5.)

- She stated during the second hearing that her superiors directed her to find Gibson guilty. (Dkt. 22 at 14; Dkt. 22-1 at 106.)

- Both the screening report and Officer Myers' hearing report state Gibson was charged with "Damage to State Property," but the technical title for Code B-215 was "Unauthorized Possession of Property." (Dkt. 22 at 14–15; *compare* Dkt. 12-2 *and* Dkt. 12-5 *to* Dkt. 12-10 at 6.)

- She proceeded with the disciplinary case rather than enforcing an arbitration clause in Gibson's user agreement with GTL. (Dkt. 22 at 16.)

These allegations do not undo the presumption that Officer Myers discharged her duties impartially.

Gibson does not allege that Officer Myers was involved in discovering or investigating the damage to his tablet. Officer Myers disputes that she began, postponed, and resumed the disciplinary hearing, and that any other staff members directed her decision. (Dkt. 12-12 at ¶¶ 6–9.) Gibson's unsubstantiated allegation that other staff members instructed Officer Myers to find him guilty is not "clear evidence" of anything, *see Perotti*, 355 F. App'x at 43, and it certainly does not overcome the high constitutional standard for proving impermissible bias, *see Piggie*, 342 F.3d at 666. And the arbitration clause is simply irrelevant. Gibson concedes that the user agreement was "between GTL and the offender." (Dkt. 22 at 16.) Perhaps it required Gibson to take claims against GTL to arbitration instead of federal court, but he does not explain how the agreement could possibly constrain the prison staff's authority to discipline him for violating prison rules.

The Court turns later in this Entry to Gibson's argument that he was denied equal protection because the hearing officer sanctioned him more harshly than another prisoner because of his race. However, his argument that he was denied his due process right to an impartial decision-maker fails.

### 3. Late Submission of Conduct Report

Gibson alleges that Caseworker Rogers did not submit the conduct report within 24 hours of her interaction with him as required by Indiana Department of Correction ("IDOC") policy. According to Gibson, Caseworker Rogers turned in the conduct report approximately four hours too late.

Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges

to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

Gibson acknowledges that "[f]ailure to follow prison rules, alone, is not enough to warrant habeas relief". (Dkt. 22 at 10.)  He nevertheless argues that "[t]he decision not to dismiss" the conduct report "based on the 24 hour mandate was arbitrary" and violated his due-process right to a hearing before an impartial decision-maker. *Id.* at 12.  He is incorrect.  Caseworker Rogers did not preside over Gibson's disciplinary hearing; her conduct therefore could not violate Gibson's right to an impartial hearing officer.  Moreover, the hearing officer's decision to proceed despite untimely submission of the conduct report does not meet the high standard discussed above for demonstrating bias or partiality.

By showing that Caseworker Rogers turned in the conduct report late, Gibson has established only that the Miami staff was not perfect in following its own rules.  This is not enough to demonstrate that he was disciplined in violation of the Constitution or federal law.

### 4. **Equal Protection**

Gibson alleges that his conviction and punishment in MCF 19-04-0595 violated the Fourteenth Amendment's equal protection clause.  Gibson states that he knows another inmate,

8

Jacob Beyers ("Beyers"), who damaged his tablet but was punished under Code C-353 and received lighter sanctions. Gibson is Black, and Mr. Beyers is white.[1]

"The Equal Protection Clause generally protects people who are treated differently because of membership in a suspect class or who have been denied a fundamental right." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016). Gibson's equal protection argument suffers from two major flaws.

First, "[t]wo individuals are similarly situated, and thus require equal treatment under the Fourteenth Amendment, if they are 'directly comparable in all material respects.'" *Jones v. Noble*, 807 F. App'x 560, 562 (7th Cir. 2020) (quoting *Reed v. Freedom Mortg.*, 869 F.3d 543, 549 (7th Cir. 2017)). Gibson and Beyers were different in at least one key respect. Gibson was disciplined twice in the two months before his hearing in this case—once for possessing or using a cell phone in violation of Code A-121, and once for battery in violation of Code B-212. (Dkt. 12-15 at 14.) Meanwhile, Beyers was last disciplined over *three years* earlier for a Code C-373 "punctuality and attendance" violation. (Dkt. 13 at 5.) The Disciplinary Code directs hearing officers to consider an inmate's "prior disciplinary record, especially during the past twelve (12) months" in determining appropriate sanctions. (Dkt. 12-11 at 35.) Gibson has not grounded his equal protection claim in a similarly situated inmate's treatment.

Second, the "Equal Protection Clause prohibits *intentional* racial discrimination." *Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021). An equal protection claimant "must show discriminatory purpose 'in *his* case.'" *Conley v. United States*, 5 F. 4th 781, 789 (7th Cir. 2021)

---

[1] The Respondent asserts that Gibson failed to exhaust this issue in his administrative appeals and that procedural default bars its consideration in this action. Although exhaustion "ordinarily should be resolved" before a claim's merits, the United States Supreme Court has never held that "the procedural-bar issue must invariably be resolved first." *Brown v. Watters*, 599 F.3d 602, 609–10 (7th Cir. 2010) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Here, addressing the merits provides a more efficient resolution.

(quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)).  Thus, Gibson must show that Officer Myers determined his guilt and sanctions at least in part to cause "'adverse effects upon an identifiable group.'" *Id.* (quoting *McCleskey*, 481 U.S. at 298).  But Officer Myers did not hear Beyers' case or determine his sanctions.  (*See* Dkt. 13 at 1.)  Gibson offers no evidence that Officer Myers even knew that another, white inmate was recently charged with the same offense.  As a result, Gibson cannot show that Officer Myers intentionally treated him more harshly than another inmate because of his race.

Gibson has not presented evidence that he was treated more harshly than a similarly situated inmate or that the Miami staff discriminated against him intentionally.  As such, his equal protection argument fails.

### 5. Practice of Bringing Disciplinary Charges to Secure Payment

Gibson asserts that Miami staff have a practice of bringing a Class B disciplinary charges against any inmate with a damaged tablet "to secure payment of the tablet."  (Dkt. 11 at 5.)  Once a restitution order is in place, the staff will reduce the charge to a Class C offense. *See id.*  This, he says, amounts to a due process violation.  However, this argument relates to none of the due process rights articulated in *Hill* and *Wolff*—notice of the charge, a limited opportunity to call witnesses and present evidence to an impartial decision-maker, a written statement of the decision, and a decision based on some evidence.  Because the staff observed those rights in this case, it was free to punish Gibson for violating the Disciplinary Code.

### 6. Meaningful Review of Administrative Appeals

Gibson appealed his disciplinary conviction and sanctions to multiple prison officials as the Disciplinary Code required.  (Dkts. 12-8, 12-9.)  Gibson argues that those officials did not meaningfully review or properly respond to his administrative appeals.

This argument does not assert a violation of the Constitution or laws of the United States and therefore is not a basis for habeas relief. The IDOC—not federal law—created the administrative appeals process. "[B]reaches of state law cannot be the basis of § 2254 relief unless they also implicate constitutional violations." *Sumbry v. Davis*, 66 F. App'x 630, 631 (7th Cir. 2003) (citing *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002)).

Gibson received every procedural protection the Constitution guaranteed him. Any shortcoming in the administrative appeals process falls beyond this Court's review.

### 7. **First Amendment Retaliation**

Gibson states that, after he was charged with damaging the tablet but before his hearing, Miami staff began deducting restitution from his trust account. He challenged the deductions through grievances. He contends that he was convicted and sanctioned in MCF 19-04-0595 in retaliation for those grievances.

"Prisoners have a right to be free from retaliation by prison officials, but . . . the procedural requirements of *Wolff* adequately protect prisoners from fraudulent charges." *Wilson v. McBride*, 93 F. App'x 994, 996 (7th Cir. 2004) (citing *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999); *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987)). Gibson has not demonstrated a due process violation, so "his retaliation claim also fails." *Id.*

### 8. **Conditions of Confinement**

Gibson finally alleges that this disciplinary conviction has affected the conditions of his confinement. (Dkt. 22 at 48-49.) The precise impact is not clear, but "habeas corpus is not a permissible route for challenging prison conditions." *Robinson v. Sherrod*, 631 F.3d 839, 840–41 (7th Cir. 2011).

### 9. Conclusion

The record makes clear that Miami staff afforded Gibson all the due process rights secured in *Hill* and *Wolff*. Moreover, the record does not support a finding that the disciplinary proceeding violated any other provision of the Constitution or federal law. Therefore, the habeas petition must be **denied**.

### III. RULE 72 OBJECTION

The Respondent opposed Gibson's equal protection argument by presenting evidence that he and another inmate—Beyers—had different disciplinary histories and hearing officers. That evidence includes Beyers' entire disciplinary history. (*See* Dkt. 13.)

The Respondent moved to maintain Beyers' disciplinary records under seal (meaning the public could not access them) and with *ex parte* restrictions (meaning Gibson could not access them). (Dkt. 14.) The Respondent stated broadly that allowing Gibson to possess the disciplinary records would violate the Disciplinary Code and "could pose a threat to Offender Beyers." (Dkt. 14 at ¶ 2.) The Respondent did not explain what harm might come from making the documents *publicly* accessible or elaborate on how disclosing the documents to Gibson could endanger Beyers.

Magistrate Judge Dinsmore denied the Respondent's Motion, observing—accurately—that it offered nothing more than conclusory statements why the Court should restrict access to the documents. (Dkt. 19.) The Respondent objects to that ruling under Federal Rule of Civil Procedure 72(a). Because of the objection, the records remain sealed and have not been issued to Gibson. *See* S.D. Ind. L.R. 5-11(g) ("If the court denies the motion, the clerk will unseal the document(s) . . . absent Fed. R. Civ. P. 72(a) objection, motion to reconsider, appeal, or further court order.").

When a litigant objects to a magistrate judge's ruling on a nondispositive matter, the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Thus, the district judge should overrule the objection unless he or she is "left with the definite and firm conviction that a mistake has been made." *Reyes v. Fishel*, 996 F.3d 420, 423 (7th Cir. 2021) (internal quotations omitted).

Magistrate Judge Dinsmore's order is not clearly erroneous or contrary to law. It accurately reflects that an order restricting access to court filings is exceptional and must be justified by good cause. (Dkt. 19 at 1–2 (citing *Citizens First Nat'l Bank v. Cincinnati Ins.*, 178 F.3d 943, 945 (7th Cir. 1999); *Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)).) The Respondent's original motion did not demonstrate good cause for the restrictions he sought. His entire justification consists of three sentences:

> Sealed Exhibit L has not been disclosed to Gibson because disclosure would allow him to be in possession of disciplinary information pertaining to another offender. Gibson is not permitted to be in possession of such information (*see* Ex. F at 8 (offense B-247, possession or solicitation of unauthorized personal information)). Additionally, allowing Gibson to be in possession of these materials could pose a threat to Offender Beyers.

(Dkt. 14 at ¶ 2.) The Respondent did not elaborate on why or how allowing Gibson to access the records endangered Beyers, and he offered no explanation whatsoever why the *public* may not have access to the documents.

The Respondent's objection is considerably more thorough than his original motion. It still does not explain why the Court should restrict *public* access to the documents. It does, however, include evidence that Gibson may be connected to violent individuals who may be inclined to harm Beyers after learning of his involvement in previous incidents inside the prison. (*See* Dkt. 21-1.) The Respondent and his counsel should approach motions to seal with this thoroughness on the front end rather than present *pro forma* motions and then object to proper rulings.

13

Because Magistrate Judge Dinsmore's ruling was not clearly erroneous or contrary to law, the Court **overrules** the Respondent's Objection, (Dkt. 21). However, the Court offers two points of clarification.

First, the Court **directs the Clerk**, *sua sponte*, to maintain Beyers' disciplinary records, (Dkt. 13), **under seal**. Beyers is not a party to this action. There is no indication that he knows his entire disciplinary history has been entered into the record, much less consented to it. He has not had an opportunity to object or otherwise be heard on the issue. And it is easy to imagine that publishing Beyers' complete disciplinary history in the public record could adversely affect his privacy, employment, or other interests upon release from prison. These concerns constitute good cause to restrict public access to Beyers' disciplinary records.

Second, the Respondent's Objection centers on concerns flowing from Gibson's *possession* of Beyers' disciplinary records. It does not contemplate that Miami staff could permit Gibson to view those documents in a controlled environment, only while working on his legal matters. The Court's order to remove the *ex parte* restriction is not an order to Miami staff to grant Gibson unlimited access to those documents. To the extent Gibson requires access to Beyers' disciplinary records to continue this litigation, he may request access from Miami staff and file the appropriate motions as necessary.

## IV. CONCLUSION

Gibson's Motion for Extension of Time to file his reply, Dkt. [20], is **GRANTED**. The Court deems Gibson's reply, Dkt. [22], timely filed and has considered it.

Gibson's Motion for court assistance, Dkt. [27], and Motion for Production of Documents, Dkt. [28], are **GRANTED to the limited extent** discussed in Part I above. The **Clerk is directed** to include a copy of the public docket sheet with Gibson's copy of this Entry.

The Respondent's Rule 72 Objection, Dkt. [21], is **OVERRULED**. The **Clerk is directed** to **remove** the *ex parte* restriction on Beyers' disciplinary records, Dkt. [13]. However, for the reasons discussed in Part III above, the **Clerk is directed** to continue to maintain those records, (Dkt. 13), **under seal**.

Finally, for the reasons discussed in Part II above, Gibson's Petition for Writ of Habeas Corpus challenging disciplinary case MCF 19-04-0595 is **DENIED**, and the action is **DISMISSED with prejudice**. The **Clerk is directed** to enter final judgment consistent with this Entry.

    **SO ORDERED.**

Date: 8/30/2021

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Lionel Gibson, #104608
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
New Castle, Indiana  47362

Abigail Recker
INDIANA ATTORNEY GENERAL'S OFFICE
abigail.recker@atg.in.gov